**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PAUL LYNN AND BRIAN COX, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 4:21-CV-809 RLW |
| | ) | |
| v. | ) | |
| | ) | |
| OLIVE & OAK, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant Olive & Oak, LLC's Motion for Summary Judgment (ECF No. 31).  This matter is fully briefed and ready for disposition.  For the reasons discussed herein, the Court grants Defendant Olive & Oak, LLC's Motion for Summary Judgment.

**BACKGROUND**

In November 2020, Defendant Olive & Oak, LLC ("Olive & Oak") instituted a tip pool when indoor dining was closed due to COVID precautions enacted by St. Louis County. (Defendant Olive & Oak's Statement of Uncontroverted Material Facts ("DSUMF"), ECF No. 33, ¶ 6).  The tip pool, implemented from November 2020 until May 2021, allowed for a "full house tip share," whereby tips went into one pool.  (DSUMF, ¶ 8).  Olive and Oak argues that it created the tip pool to "keep some of its service staff employed, versus laying them off," heading into the winter months when Olive & Oak would not have as much of a "traditional dining" opportunity due to the COVID restrictions.  (DSUMF, ¶ 33).  Olive and Oak claims that, by compensating employees through a tip pool, servers could participate in the online and carry out tips.  (DSUMF, ¶ 12).

Plaintiffs Paul Lynn and Brian Cox are professional servers.  (Plaintiffs' Responses to Defendant's Statement of Uncontroverted Material Facts ("Response to SUMF"), ECF No. 34, ¶ 7).  Plaintiffs argue that the tip pool was created not to help servers when indoor dining was unavailable, but "to shed some of [Olive and Oak's] overhead expenses by cutting the wage of hosts and expos to less than minimum wage."  (ECF No. 35 at 2).[1]  Plaintiffs contend that Olive & Oak took Plaintiffs' tips and routed this money to pay "non-tipped employees like hosts and expos" in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*.  (ECF No. 35 at 2).

Plaintiffs allege claims under the FLSA, for the nonpayment of wages in contravention of Missouri's Minimum Wage Law ("MMWL"), Mo. Rev. Stat., § 290.505, *et seq*.,  for breach of contract, fraud, and conversion.  (Petition, ECF No. 4).

## STANDARD OF REVIEW

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).  The substantive law determines which facts are critical and which are irrelevant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  *Id.*  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.*

---

[1] "Expos" is short for "expediter."  *See* https://www.masterclass.com/articles/expediter-explained (last visited 9/6/22).

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.  The nonmoving party may not rest upon mere allegations or denials of his pleading.  *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331.  The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"  *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## DISCUSSION

### A.  Tip Pool Requirements

"Tip pooling is a common practice by which tips are collected and redistributed among tipped employees to equalize their incomes." *Latcham v. U.S. Pizza Co., Inc.*, No. 4:16-CV-00582 BSM, 2018 WL 11424780, at *2 (E.D. Ark. June 28, 2018) (citing *Chhab v. Darden Restaurants, Inc.*, No. 11 CIV. 8345 NRB, 2013WL5308004, at *6 (S.D. N.Y. Sept. 20, 2013)). The FLSA permits "the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A). An "employer may require an employee for whom the employer takes a tip credit to contribute tips to a tip pool only if it is limited to employees who customarily and regularly receive tips." 29 C.F.R. § 531.54 (c)(1).  Employees must have "more

than *de minimis* direct customer interaction in order to be included in a tip pool[.]" *Ford v. Lehigh Valley Rest. Grp., Inc.*, No. 3:14CV227, 2014 WL 3385128, at *4 (M.D. Pa. July 9, 2014); *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 231 (5th Cir. 2011) ("the district court reasonably found direct customer interaction 'highly relevant' to tip-eligibility"); *Ford v. Lehigh Valley Rest. Grp., Inc.*, No. 3:14CV227, 2014 WL 3385128, at *4 (M.D. Pa. July 9, 2014) ("section 203(m)'s requirement that employees 'customarily and regularly receive tips' to be included in this tip pool will be a fact intensive inquiry focusing on an employee's level of direct customer interaction").  Plaintiffs allege Olive & Oak violated 29 U.S.C. § 203(m)(2) because Olive & Oak improperly took a tip-credit for non-tipped labor and paid Plaintiffs a reduced hourly rate instead of minimum wage.

## B. FLSA

Plaintiffs claim that summary judgment is inappropriate "because there are material disputes of fact as to whether hosts and expos are 'customarily tipped' employees who can take server tips under the relevant portions of the FLSA." (ECF No. 35 at 2).[2]  Plaintiffs argue that "hosts and expos are not customarily tipped, and that during the 'tip pool' neither hosts nor expos interacted with Plaintiffs' customers in any meaningful way that would justify tipping them." (*Id.*)  Plaintiffs maintain that Olive & Oak has not demonstrated that hosts or expos had any significant customer interaction or that they customarily received tips. (ECF No. 35 at 4). Plaintiffs state that they never observed Olive & Oak's expo, Reid Maynard, "have any customer

---

[2] The parties agree that this is the scope of their dispute and, therefore, the Court limits its discussion to this issue and assumes that the other elements of a proper tip pool are present, *e.g.,* notice of the tip pool; managers cannot be part of the tip pool.  *See also* DSUMF, ¶¶ 62, 63 (Plaintiffs acknowledged receiving written notice of the tip pool and new tip pool structure); *Latcham*, 2018 WL 11424780, at *3 ("The FLSA, however, prohibits managers from sharing in a tip pool.").

interaction or receive any tips, but since they frequently worked with Maynard, they likely would have if it had happened."  (ECF No. 35 at 4).

Olive & Oak has provided facts to support its position that the "expo" or "expediter" position had a high level of direct customer interaction both prior to and during the tip pool. Olive & Oak supplied evidence that prior to the tip pool's creation in November 2020, an expo at Olive & Oak would customarily wait on a table of diners for tips and also received tips from online orders.  (DSUMF, ¶¶ 19, 22, 29). Expediter Reid Maynard testified that prior to the tip pool beginning in November 2020, he received tips from to-go orders placed at Olive & Oak. (DSUMF, ¶ 37). At times of indoor dining, Maynard would have face-to-face interactions with Olive & Oak's customers if they needed their server or to occasionally answer questions about food.  (DSUMF, ¶ 32).  Maynard would also walk around the restaurant, checking on tables and finding servers for customers.  (DSUMF, ¶ 33).  He would package to-go orders, occasionally running them to the cars.  (DSUMF, ¶ 34).  Then, after the tip pool began in November 2020, Maynard received a 10 percent tip for to-go orders.  (DSUMF, ¶ 38).   That is, particularly when indoor dining was not allowed, the expediter was responsible for driving a large portion of the tips when Olive & Oak went into a tip pool.  (DSUMF, ¶ 19).  The expediter would take orders from customers on the telephone and run orders to customers, either in-house or curb-side. (DSUMF, ¶¶ 20, 31).

Plaintiffs try to challenge Olive & Oak's position that the expediter role did not have direct customer interaction.  (ECF No. 35 at 4 (citing Response to SUMF, ¶ 19)).  Plaintiffs' testimony, however, does not refute Olive & Oak's position.  Rather, Plaintiffs merely contend that they did not observe expediter Maynard have customer interaction or receive tips. (Response to SUMF, ¶ 7).  Plaintiffs' assertions that the expediter did not have customer

interactions, which are based solely on their interactions with the expediter rather than any personal knowledge of Olive & Oak's restaurant practices, are too speculative to frame genuine issues of material fact. *See Liberty Lobby,* 477 U.S. at 248 (The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In any event, Plaintiffs do not dispute that Maynard answered customer questions and facilitated carry out orders. Further, Mark Hinkle testified that hosts and expos customarily received more than $30 per month in tips prior to institution of the tip pool. (DSUMF, ¶ 22). Plaintiffs' omissions, combined with Olive & Oak's other uncontroverted facts as to Maynard's roles, provide enough factual support for the Court to find that expediters had more than *de minimis* contact with customers. Thus, the Court concludes that the expediter's inclusion in the tip pool does not invalidate the tip pool, given his direct customer contact. *See Arencibia v. 2401 Rest. Corp.*, 831 F. Supp. 2d 164, 178 (D.D.C. 2011) ("Ms. Albert need not serve food to guests to qualify as someone who 'customarily and regularly receives tips.' Rather, her direct interaction with customers in arranging and planning private parties is sufficient."); *cf. Myers v. Copper Cellar Corp.*, 192 F.3d 546, 550-51 (6th Cir. 1999) (inclusion of salad makers invalidates a tip pool because these employees did not receive tips directly from customers and did not interact with customers); *Ford v. Lehigh Valley Rest. Grp., Inc.*, No. 3:14CV227, 2014 WL 3385128, at *5 (M.D. Pa. July 9, 2014) (holding that "to properly participate in a tip pool a restaurant employee must have direct customer interaction" and denying a motion to dismiss because "[t]his fact intensive inquiry requires the benefit of a fully developed factual record").

The parties put forth less discussion related to Plaintiffs' assertion that the host position was improperly included in the tip pool. Although Plaintiffs claim that they were unaware that

hosts received tips, Hinkle testified that hosts customarily received tips prior to institution of the tip pool. (DSUMF, ¶ 22).  Further, Alex Pesek, Human Resources Director for Olive & Oak, testified that, prior to the tip pool, hosts did not receive tips from bartenders and servers, but from online carryout orders or to-go orders taken at the host stand.  (DSUMF, ¶ 27).  This manner in which hosts were tipped prior to the tip pool, *i.e.*, not from servers, could explain why Plaintiffs were unaware that hosts and hostesses were customarily tipped positions.

Plaintiffs' response to Olive & Oak's relevant statements of fact does not dispute Olive & Oak's position that hosts were customarily tipped. Olive & Oak stated that hosts were typically tipped from carryout orders or to-go orders at the tip stand prior to the tip pool.  (ECF No. 33-4, Exhibit D, Alex Pesek, Pg. 16:22-25; Pg. 17:1-3).  Plaintiffs attempt to refute this statement with equivocal testimony from Susan Luina that she is "not totally knowledgeable about the breakdown of the tip and what hosts get … [she] [doesn't] believe to the best of her knowledge it's changed." (Response to SUMF, ¶ 27).  Plaintiffs also cite to their own testimony, claiming that hosts split tips with servers, bartenders, and bussers under the "new tip pool." (*Id.*) However, this testimony does not refute Olive & Oak's customary procedure that hosts received tips from online carryout orders or to-go orders taken at the host stand even prior to the tip pool, which is the crux of Olive & Oak's argument. (DSUMF, ¶ 27). Thus, the Court finds that Plaintiffs have not been able to refute Olive & Oak's evidence that hosts constitute customarily tipped positions for purposes of summary judgment.  *See Kilgore v. Outback Steakhouse of Florida, Inc.,* 160 F.3d 294, 300–02 (6th Cir.1998) (affirming a magistrate judge's summary judgment ruling that hosts and hostesses at Outback steak houses qualified as "tipped employees," and thus were legitimately subsumed into a section 203(m) tip pool, because they worked in a customarily "tipped" service occupation).

Therefore, the Court grants Olive & Oak's Motion for Summary Judgment as to Count I under the FLSA because the undisputed material facts do not support Plaintiffs' claim.   The evidence supports a finding that expediters and hosts were customarily tipped employees who were properly included in Olive & Oak's tip pool under the FLSA.

### C.  State Law Claims

#### 1.  Count II

In Count II of the Petition, Plaintiffs allege: "In violation of Missouri Statute 290.502(1), Defendant refused to pay Plaintiffs the minimum wage rate for all hours worked."  (Petition, ¶ 64).  Mo. Rev. Stat. Section 290.502 provides, in pertinent part, "[e]xcept as may be otherwise provided pursuant to sections 290.500 to 290.530, effective January 1, 2007, every employer shall pay to each employee wages at the rate of $6.50 per hour, or wages at the same rate or rates set under the provisions of federal law as the prevailing federal minimum wage applicable to those covered jobs in interstate commerce, whichever rate per hour is higher."  Plaintiffs, as servers, however, are subject to Mo. Rev. Stat. §290.512.1: "No employer of any employee who receives and retains compensation in the form of gratuities in addition to wages is required to pay wages in excess of fifty percent of the minimum wage rate specified in sections 290.500 to 290.530, however, total compensation for such employee shall total at least the minimum wage specified in sections 290.500 to 290.530, the difference being made up by the employer."

Plaintiffs further allege that "[i]n violation of Missouri Statute §290.110, Defendant has refused to pay Plaintiffs their final paychecks."  (Petition, ¶ 66).  Plaintiffs claim that they provided a written request for their final paychecks after their terminations, in accordance with § 290.110, but that Olive & Oak never provided their final paychecks.  (Petition, ¶¶ 67-68).

"The [Missouri Wage and Hour Law ("MWHL")] is generally interpreted in accordance with the FLSA, and for the purposes of this order, the Court will treat Plaintiffs' FLSA claims and MWHL claims as if they were the same." *Karnes v. Happy Trails RV Park, LLC*, 361 F. Supp. 3d 921, 927–28 (W.D. Mo. 2019) (citing Mo. Rev. Stat. § 290.505(4) ("Except as may be otherwise provided ... this section shall be interpreted in accordance with the Fair Labor Standards Act[.]").

The Court finds no support for either of Plaintiffs' MWHL claims.  Plaintiff Cox testified that he received the Missouri tipped employee minimum wage in both 2020 and 2021.  (ECF No. 32 at 11).  Cox stated that he was not claiming that Olive & Oak violated the FLSA by paying him the tipped employee minimum wage.  (*Id*.)  Likewise, Plaintiff Lynn testified that he was not claiming that Olive & Oak failed to pay him the tipped minimum wage for hourly tipped employees.  (*Id*.)  The Court finds the undisputed facts do not support Plaintiffs' action in Count II for failure to pay the Missouri hourly minimum wage.

The Court further finds that the undisputed material facts do not support Plaintiffs' claim in Count II under Mo. Rev. Stat. § 290.110.  Section 290.110 only applies to employees who were "discharged."  Plaintiffs were not discharged and they received their final paychecks. Plaintiff Lynn quit his job at Olive & Oak and received his final paycheck.  (ECF No. 32 at 12). Similarly, Plaintiff Brian Cox verbally resigned from his employment at Olive & Oak and received his last paycheck when he left in 2021.  (*Id*.)  Brian Cox never sent any type of written communication in 2021 to Olive & Oak claiming that he did not receive his final paycheck, as required under the statute.  (*Id*.)  Plaintiffs allege that their employment was "terminat[ed]" (Petition, ¶ 67).  Plaintiffs, however, have not provided any evidence in support of their claim that they were discharged, constructively or otherwise, under the MMWL.  Moreover, the Court

finds that being forced to participate in a tip pool does not make a workplace intolerable as a matter of law, such to support a constructive discharge claim.  *See Cosby v. Steak N Shake*, 804 F.3d 1242, 1246 (8th Cir. 2015) (quoting *Duncan v. Gen. Motors Corp.,* 300 F.3d 928, 936 (8th Cir. 2002) ("Constructive discharge also requires 'considerably more proof than an unpleasant and unprofessional environment.'").

Thus, the Court finds that Plaintiffs have not provided any evidence in support of finding a violation of the MWHL. *See* ECF No. 36 at 9. The undisputed evidence demonstrates that Plaintiffs were provided the tipped minimum wage and received their final paychecks.  Thus, the Court grants Olive & Oak's Motion for Summary Judgment as to Count II.

### 2.   Counts III, IV, and V

Plaintiffs' Petition purports to allege state law claims for breach of contract (Count III), conversion (Count IV), and fraud (Count V). Olive & Oak contends that Plaintiffs' state law claims are preempted by the FLSA because they relate to a tip pool. Plaintiffs assert that "[d]ozens of district court opinions in the Eighth Circuit, however, have held that the FLSA does not preempt state law claims."  (ECF No. 35 at 7 (citing *Tinsley v. Covenant Care Servs., LLC*, No. 1:14CV00026 ACL, 2016 WL 393577, at *4 (E.D. Mo. Feb. 2, 2016) ("District courts within the Eighth Circuit, however, have found that the FLSA does not preempt state common law claims similar to those asserted by Plaintiffs.").[3]

_____

[3] *Tinsley* cites the following cases: *See Fry v. Accent Mktg. Servs., LLC*, 4:13CV59 CDP, 2013 WL 2403669, at *2 (E.D. Mo. May 31, 2013); *Byrd v. BJC Health System,* 4:11CV1571 HEA, 2013 WL 1581420, *2–3 (E.D. Mo. Apr. 12, 2013); *Davenport v. Charter Communications, LLC,* 4:12CV7 AGF, 2012 WL 5050580, *2–*3 (E.D. Mo. Oct. 12, 2012) (no preemption of Missouri's Minimum Wage Law, or state law claims for breach of contract, quantum meruit, or unjust enrichment based on the same alleged facts underlying FLSA claim); *Perez–Benites v.*

Olive & Oak argues that *Tinsely* is inapplicable to the present action.  The *Tinsely* court concluded that state law was not an obstacle to the goals of the FLSA.  Olive & Oak argues that *Tinsely* is distinguishable because the Tinsley plaintiffs' claims were "duplicative claim[s] under the FLSA and the Missouri Minimum Wage Laws."  (ECF No. 36 at 9).  Olive & Oak contends that the *Tinsely* "holding would not be applicable here because the FLSA exclusively addresses the validity of a tip pool and duplicative state law claims would create uncertain[t]y for restaurants in their institution of a valid tip pool."  (*Id.*)

State law is preempted if a court determines that (1) Congress expressly preempts state law; (2) Congress has pervasively regulated conduct in a field manifesting its intent to preempt state law; or (3) the state law conflicts with federal law. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 98 (1992); *English v. Gen. Elec. Co.,* 496 U.S. 72, 78–79 (1990); *Huang v. Gateway Hotel Holdings,* 520 F. Supp.2d 1137, 1141 (E.D. Mo. 2007). In the absence of express pre-emptive language, as is the case with the FLSA, the Eighth Circuit Court of Appeals has held that:

> pre-emptive intent may ... be inferred if the scope of the statute indicates that
> Congress intended federal law to occupy the legislative field, or if there is an

---

*Candy Brand, LLC,* 267 F.R.D. 242, 246 (W.D. Ark. 2010) (holding that the plaintiffs' breach of contract claim seeking overtime pay was not preempted by the FLSA; "Most district courts in the Eighth Circuit agree that the FLSA's savings clause...indicates that the FLSA does not provide an exclusive remedy for its violations."); *Doyel v. McDonald's Corp.,* No. 4:08CV01198 CAS, 2009 WL 350627, at *4 (E.D. Mo. Feb. 10, 2009); *LePage v. Blue Cross & Blue Shield,* No. 08–584 (RHK/JSM), 2008 WL 2570815, *8 (D. Minn. June 25, 2008) ("While Plaintiffs may not obtain double recovery, they are free to pursue relief under the FLSA as well as unjust enrichment.") (citation omitted); *Robertson,* 642 F. Supp.2d at 928 (holding that the FLSA did not preempt state law claims for breach of contract, quantum meruit, and unjust enrichment); *Osby v. Citigroup, Inc.,* 07CV6085 NKL, 2008 WL 2074102, at *2 (W.D. Mo. May 14, 2008); *Bouaphakeo v. Tyson Foods, Inc.,* 564 F. Supp.2d 870, 885 (N.D. Iowa 2008) (holding that the plaintiffs' duplicative claim under Iowa's minimum wage law was not preempted by the FLSA because the claim did not interfere with, frustrate, conflict with, or stand as an obstacle to the goals of the FLSA, and because FLSA does not provide the exclusive remedy for its violations).

actual conflict between state and federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Qwest Corp. v. Minn. Pub. Utilities Comm'n,* 684 F.3d 721, 726 (8th Cir. 2012). The Eighth Circuit has not addressed the specific issue of whether the remedies under the FLSA are exclusive. *See Tinsley*, 2016 WL 393577, at *4.

The Court notes that Plaintiffs' allegations relate solely to the purportedly illegal tip pool instituted by Olive & Oak in November 2020.  The Court, however, finds the precedent unclear as to whether Congress intended the FLSA to preempt all state law claims such as the claims presented herein. Irrespective of the preemption analysis, the Court holds that all of Plaintiffs' claims fail as a matter of law for failure to provide evidentiary support for all of the essential elements of the breach of contract, conversion, and fraud claims.  The Court grants summary judgment in favor of Olive & Oak on these claims on this basis alone, as discussed below.

### a.  Count III

Olive & Oak argues that, under the undisputed material facts, it is entitled to judgment as a matter of law because Plaintiffs cannot provide evidence in support of every element of the breach of contract claim, particularly the existence of a contract between the parties.

Plaintiffs maintain that their breach of contract claim is not based upon the tip pool, but that "Plaintiffs each entered into a contract with Defendant whereby Defendant was to compensate Plaintiffs with a set hourly wage for each hour worked and Plaintiffs would be allowed to keep more than 95% of their tips earned."  (Response to SUMF, ¶¶ 41, 42, 47, 48). Plaintiffs cite to paragraph 73 of their own Petition in support of this statement.  (*Id.* (citing Petition, ¶ 73) ("Plaintiffs each entered into a contract with Defendant whereby Defendant was to compensate Plaintiffs with a set hourly wage for each hour worked and Plaintiffs would be

allowed to keep more than 95% of their tips earned."). Plaintiffs cannot rebut Olive & Oak's statement of facts with a citation to the unverified Petition. *See* Fed. R. Civ. P 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). Thus, Olive & Oak's statement that Plaintiffs' breach of contract claim relates to the November 2020 tip pool remains unrefuted.

In Missouri, "[a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010); *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 994 (8th Cir. 2018). The Olive & Oak employee handbook contains an explicit disclaimer that its policies and practices are not an express or implied contract. (DSUMF, ¶ 61; Response to SUMF, ¶ 61 ("Admitted.")). Based upon the foregoing, the Court finds that the November 2020 tip pool cannot form the basis of a breach of contract claim. Plaintiffs have provided no evidence to support the existence of any contract between the parties, other than the allegations in their Petition, which are insufficient for purposes of summary judgment.

### b.  Count IV

Count IV purports to allege a claim for conversion.  Plaintiffs allege that Olive & Oak misappropriated Plaintiffs' tips, causing Plaintiffs to lose thousands of dollars.  (Petition, ¶¶ 82-84).

Under Missouri law, "conversion may be proved in one of three ways: (1) by showing a tortious taking, (2) a use or appropriation by the defendant indicating a claim or right in opposition the owner, or (3) a refusal to give up possession on demand." *Envirotech, Inc. v. Thomas,* 259 S.W.3d 577, 592 (Mo. Ct. App. 2008) (quoting *Bell v. Lafont Auto Sales,* 85 S.W.3d 50, 54 (Mo. Ct. App. 2002)); *accord Emerick v. Mutual Benefit Life Ins. Co.,* 756 S.W.2d 513, 525 (Mo. banc 1988). "Conversion is not the appropriate action when the claim is solely for the recovery of money." *Boswell v. Panera Bread Co.*, 91 F. Supp. 3d 1141, 1145 (E.D. Mo. 2015) (citing *Capitol Indem. Corp. v. Citizens Nat'l Bank of Ft. Scott, N.A.,* 8 S.W.3d 893, 900 (Mo. Ct. App. 2000); *Dillard v. Payne,* 615 S.W.2d 53, 55 (Mo. banc 1981)). "Specific checks, drafts or notes will support a cause of action for conversion where they can be described or identified as a specific chattel." *Dayton Constr., Inc. v. Meinhardt,* 882 S.W.2d 206, 208–09 (Mo. Ct. App. 1994). The Missouri Supreme Court has recognized a narrow exception in cases where a plaintiff placed funds "in the custody of another for a specific purpose," and the defendant diverts those funds "for other than such specified purpose [.]" *Dillard,* 615 S.W.2d at 55 (Mo. 1981).

The Court finds that Plaintiffs have not presented facts or evidence to support a conversion claim. As alleged, Plaintiffs' conversation claim is based upon Olive & Oak's supposed misappropriation of Plaintiffs' tips as part of the mandatory tip pool.  (Petition, ¶¶ 81-87).  However, the tip money allegedly owed to Plaintiffs and taken as part of the tip pool cannot

be identified as a specific chattel, and the money has never been in Plaintiffs' control and given in trust to Olive & Oak for a specific purpose. *See Boswell*, 91 F. Supp. 3d at 1145. Therefore, the Court grants summary judgment in favor of Olive & Oak on Count IV of Plaintiffs' Petition.

### c. Count V

Finally, Plaintiffs' fraud claim in Count V fails as a matter of law. Under Missouri law, the elements of a submissible case of fraud are: "1) a false, material representation; 2) the speaker's knowledge of its falsity or his/her ignorance of the truth; 3) the speaker's intent that his/her representation should be acted upon by the hearer in the manner reasonably contemplated; 4) the hearer's ignorance of the falsity of the representation; 5) the hearer's reliance on the representation being true; 6) the hearer's right to rely thereon; and 7) the hearer's consequent and proximately-caused injuries." *BMK Corp. v. Clayton Corp.,* 226 S.W.3d 179, 193 (Mo. Ct. App. 2007) (quoting *Murray v. Crank,* 945 S.W.2d 28, 31 (Mo. Ct. App. 1997)); *John Doe CS v. Capuchin Franciscan Friars,* 520 F. Supp. 2d 1124, 1133 (E.D. Mo. 2007). The failure to establish any one of these elements is fatal. *Paul v. Farmland Indus., Inc.,* 37 F.3d 1274, 1277 (8th Cir.1994).

Plaintiffs allege that, "at the start of the employment period of each Plaintiff and within the applicable statute of limitations, made numerous representations of fact to Plaintiffs, including, but not limited to, that Plaintiffs could be forced to tip out non-tipped employees, that Plaintiffs' tips were going to other employees and not Defendant, that Plaintiffs would receive their wages for all hours worked and that these wages would be in the proper amount." (Petition, ¶ 89). Plaintiffs further allege that these representations were false because "Defendant knew it would be using Plaintiffs' tips to pay the back of the house, knew it would be sharing in Plaintiffs' tips, and knew it was going to deprive Plaintiffs of their wages due to their conduct[.]"

In response, Olive & Oak argues that Plaintiffs have not presented evidence of a false statement by Olive & Oak because it truthfully informed Plaintiffs of the FLSA tip credit and the new tip pool in November 2020.  (ECF No. 32 at 15).

The Court finds that Plaintiffs cannot state a fraud claim based upon the tip pool information allegedly communicated by Olive & Oak to Plaintiffs.  As previously discussed herein, the Court has found that the tip pool was legal and did not violate state or federal wage laws.  Therefore, the Court finds that no fraudulent statements were made to Plaintiffs as a matter of law.  Moreover, Plaintiffs' fraud claim also fails because they have not alleged the allegedly fraudulent statements with the specificity required by Fed. R. Civ. P. 9(b) in that Plaintiffs have not identified the "who, what, where, when and how" of the alleged fraud.  *United States ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 556 (8th Cir.2006); *Arthur v. Medtronic, Inc.*, 123 F. Supp. 3d 1145, 1149 (E.D. Mo. 2015).  Thus, the Court grants summary judgment in favor of Olive & Oak on Plaintiffs' fraud claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Olive & Oak LLC's Motion for Summary Judgment (ECF No. 31) is **GRANTED**.

An appropriate Judgment is filed herewith.


 Dated this 19th day of September, 2022.

*Ronnie L. White*

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

- 16 -